13 F.3d 406
 RICO Bus.Disp.Guide 8436
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James M. SHIELDS, Plaintiff-Appellant,
v.
BOETTCHER INVESTMENT CORPORATION; Boettcher & Co., Inc., a
Delaware Corporation; Bryan Shobe, Defendants-Appellees.
 No. 92-2291.
 United States Court of Appeals, Tenth Circuit.
 Nov. 22, 1993.
 
 Before McKAY, Chief Judge, SETH, and BARRETT, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 The issue in this case is whether the statute of limitations controlling plaintiff's claims should have been tolled to allow the late filing of his complaint. Because we agree with the district court that plaintiff should have discovered his claims by 1984 at the latest, and because the facts do not warrant the application of equitable estoppel, we affirm the district court's dismissal of plaintiff's claims.[2]
 
 
 3
 In April 1990, plaintiff James M. Shields filed suit in the United States District Court for the District of New Mexico advancing claims based on violations of federal securities laws, RICO, and New Mexico common law. His claims arose out of his 1981 purchase of oil and gas limited partnerships through defendants Boettcher Investment Corporation and Boettcher & Co., Inc. (Boettcher) and Boettcher's broker, Bryan Shobe. The gravamen of plaintiff's complaint is that Boettcher fraudulently misled him into purchasing the partnerships, and specifically that Boettcher did not perform the required due diligence, while representing that it had.
 
 
 4
 The district court, finding that plaintiff's claims were barred by the applicable statute of limitations, dismissed the case. In so doing, the court held that plaintiff should have known of the basis of his claims against Boettcher by April 1984 at the latest. Shields v. Boettcher Inv. Corp., No. CIV-90-395-JC, Amended Memorandum Opinion at 5 (D. N.M. Nov. 23, 1992), Br. of Appellant at tab 2 (Order).[3] While we note that the question of when a plaintiff discovered or should have discovered the existence of a claim is usually one of fact, see Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1042 (10th Cir.1980), there are situations where, as here, the evidence before the court "clearly and convincingly persuade[s] the trial judge that plaintiff in the exercise of reasonable diligence would have discovered the fraud at such a time as to bar the action," Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687, 694 (10th Cir.), cert. denied, 454 U.S. 895 (1981). In those instances, it is proper to dispose of the issue as a matter of law.
 
 
 5
 This case is decided under the law as it existed before the recent Supreme Court decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 111 S.Ct. 2773 (1991). Lampf held that the three-year "period of repose" in 10b and Rule 10b-5 is an absolute bar to suit beyond that date, and, thus, tolling principles do not control that period. Id. at 2782. Lampf, however, does not apply to suits, such as this one, which were filed before June 19, 1991. Anixter v. Home-Stake Prod. Co., 977 F.2d 1533, 1542-43 (10th Cir.), reh'g granted in part on other issues, 977 F.2d 1549 (10th Cir.1992), cert. denied, 113 S.Ct. 1841 (1993). Applying pre-Lampf law, therefore, we borrow the four-year statute of limitations for fraud actions from the law of New Mexico. See Aldrich, 627 F.2d at 1041; N.M. Stat. Ann. 37-1-4 (Michie 1978).
 
 
 6
 It is clear from the complaint that suit was brought more than four years after the cause of action accrued: the alleged fraud occurred when the partnerships were purchased in 1981; suit was filed in 1990. Plaintiff, therefore, bears the burden of demonstrating that the statute should be tolled. Aldrich, 627 F.2d at 1041 n.4.
 
 
 7
 While the length of the limitations period is a matter of state law, federal law determines whether tolling of the relevant statute is appropriate. Id. at 1041.[4] For fraud actions, federal equitable tolling principles provide that
 
 
 8
 "where a plaintiff has been injured by fraud and 'remains in ignorance of it without fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' "
 
 
 9
 Ebrahimi v. E.F. Hutton & Co., 852 F.2d 516, 521 (10th Cir.1988)(quoting Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946)(which quoted Bailey v. Glover, 88 U.S. (21 Wall.) 342, 347 (1875))). To avail himself of this exception to the period of limitations, therefore, plaintiff must show that he was "without fault or want of diligence" in discovering the fraud. Or, conversely, "the limitations period begins to run when the aggrieved party discovers, or should have discovered by the exercise of reasonable diligence, the facts constituting the fraud." Aldrich, 627 F.2d at 1041. As noted above, the district court held that, exercising reasonable diligence, plaintiff should have discovered the fraud by April 1984. Plaintiff's complaint, therefore, was filed two years too late.
 
 
 10
 Plaintiff offers two alternative theories to avoid this result. First, he urges the application of the doctrine of equitable tolling, arguing that the exercise of reasonable diligence would not have revealed the basis of his claim until 1989 when he was told by a lawyer that Boettcher had not performed the due diligence inquiry. Alternatively, plaintiff asks us to invoke the principle of equitable estoppel. We address each theory in turn.
 
 
 11
 Plaintiff contends that equitable principles should toll the statute because Boettcher's misrepresentations about the performance of its due diligence obligations prevented him from discovering the fraud until 1989. Plaintiff, however, need not "have fully discovered the nature and extent of the fraud before [he was] on notice that something may have been amiss. Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." Kennedy v. Josephthal & Co., 814 F.2d 798, 802 (1st Cir.1987); see also Ebrahimi, 852 F.2d at 523; Peterson, Lowry, Rall, 651 F.2d at 695 ("Discovery for equitable tolling purposes must not ... be equated with proof of each and every element of plaintiff's case.") Indeed, inquiry notice is all that is required to trigger the statute. The First Circuit has characterized those facts triggering inquiry notice as "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale...." Cook v. Avien, Inc., 573 F.2d 685, 697-98 (1st Cir.1978). Under the facts of this case, plaintiff had sufficient storm warnings by early 1984 to alert him to the possibility that the significant omission of Boettcher's duty to perform its due diligence may have been involved in the sale of the partnerships. Plaintiff had to have known that "something may have been amiss," Kennedy, 814 F.2d at 802, and reasonably should have suspected that Boettcher's failure to perform its due diligence examination may have contributed to his loss.
 
 
 12
 The district court has thoroughly analyzed the various items of evidence available to plaintiff which should have tipped him off about Boettcher's failings. We will not repeat that exercise here. We will briefly address, however, a few of the extraneous points raised in plaintiff's briefs.
 
 
 13
 Plaintiff has consistently argued to the district court and on appeal that his knowledge of potential claims against the general partner were not warnings about Boettcher. We disagree. When his investment began to fail, plaintiff became aware of various fraudulent activities on the part of the general partner, which fraud he alleged in his complaint. See Appellee's Supp.App. at 9-13. Thus, if plaintiff knew of the general partner's fraud, he must also have known facts which cast suspicion on either the thoroughness of Boettcher's due diligence effort or whether such due diligence had even been carried out. After such a spectacular investment failure, the reasonable investor would have wondered why Boettcher's due diligence, that may have alerted him to potential problems, did not do so. This is the kind of inquiry notice sufficient to trigger the statute of limitations.
 
 
 14
 The fact that some of the documents involved in this transaction did not specifically refer to Boettcher's due diligence obligation is beside the point. All of the facts surrounding this transaction are relevant. See Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1516 (10th Cir.1983). Plaintiff had other warnings by 1984, including the bankruptcy of the general partner, plaintiff's own involvement in a class action lawsuit over these partnerships, and communications from others speculating on Boettcher's potential liability. All of these events should have alerted plaintiff that due diligence may not have been done or done correctly and that "something may have been amiss," Kennedy, 814 F.2d at 802.
 
 
 15
 As an alternative to equitable tolling, plaintiff urges the court to invoke the doctrine of equitable estoppel. While equitable tolling focuses on when the statute of limitations begins to run, "[e]quitable estoppel acknowledges that the statute has run, but is invoked to estop the defendant from asserting the defense because defendant's actions lulled the plaintiff into forbearing from bringing suit within the period of limitations." 3B Harold S. Bloomenthal, Securities & Federal Corporate Law 9A.09 at 9A-22 (1992 Revision). Plaintiff, however, alleges no facts to establish that he knew of his cause of action before the statutory filing period elapsed, but that Boettcher prevailed upon him not to file suit. The facts of this case do not warrant the application of equitable estoppel.
 
 
 16
 We note finally that plaintiff in his reply brief complains that some of the facts relied upon by Boettcher in its answer brief are not contained in the record. These facts included alleged assurances by Boettcher's broker that the investment "could not miss" and that the letters of credit "would never be called." While these specific statements may not appear in the documents and affidavits produced through the discovery in this case, they do appear in substance in plaintiff's complaint. See Appellee's Supp.App. at 8. We note that plaintiff's counsel signed the complaint, and we call his attention to the requirements of Fed.R.Civ.P. 11.
 
 
 17
 The judgment of the United States District Court for the District of New Mexico is Affirmed.[5]
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The Amended Order and Final Judgment of the district court, filed on February 9, 1993, clarified that judgment was intended to dismiss all claims against all defendants. Summary dismissal of this appeal, therefore, is unnecessary
 
 
 [3]
 Because the standard for the accrual of a cause of action under RICO is the same as that for a 10b claim, the court treated the causes of action concurrently. See Order at 5. Thus, plaintiff's observation in his reply brief that the RICO claim was unaddressed by the district court is in error
 
 
 [4]
 Thus, plaintiff's cases citing New Mexico law regarding the time when a limitation period begins are inapposite
 
 
 [5]
 Appellee's motion to strike is hereby denied